Joyce BARNES et al.

v.

**BOARD OF DIRECTORS, MOUNT ANTHONY UNION HIGH SCHOOL DISTRICT (NO. 14), et al.**

Civ. A. No. 74–237.

United States District Court,
D. Vermont.

Aug. 13, 1975.

Memorandum and Order of Aug. 13, 1975 as Amended Sept. 8, 1975.

Supplemental Memorandum and Order July 8, 1976.

Jeff Taylor, American Civil Liberties Union of Vermont, Inc., Montpelier, Vt., for plaintiffs.

A. Luke Crispe, Brattleboro, Vt., J. Bernard Harte, Bennington, Vt., for Lawrence Harrington.

## MEMORANDUM AND ORDER

HOLDEN, Chief Judge.

The plaintiffs are registered voters in the various school districts that combined to constitute the membership of the Mount Anthony Union High School District. By this action they request the Court to order reapportionment of the board of directors of the union school district. Jurisdiction in this Court is founded on 28 U.S.C. § 1343(3). The case is presently submitted on the plaintiffs' motion for summary judgment and the defendants' motion to bring in third-party defendants.

The parties are agreed that the representation of the five member districts on the board of directors of the Mount Anthony Union High School District is apportioned according to the following table:

| District | Population No. | % | Board Members No. | % | No. of People Per Board Member |
|---|---|---|---|---|---|
| Bennington | 13,602 | 69.0 | 4 | 36.4 | 3,400 |
| Shaftsbury | 1,974 | 10.0 | 2 | 18.2 | 987 |
| Pownal | 2,441 | 12.4 | 2 | 18.2 | 1,221 |
| N. Bennington | 1,421 | 7.2 | 2 | 18.2 | 711 |
| Woodford | 286 | 1.5 | 1 | 9.1 | 286 |
| Total | 19,724 | 100.0 | 11 | 100.0 | 1,793 |

From these statistics, it is at once apparent that representation on the present union board is not apportioned according to the population of the member districts. Woodford's single director represents a population of 286; each of Bennington's four directors on the union board represents 3,400 people. The school districts of Shaftsbury, Pownal and North Bennington have equal representation for respective populations of 987, 1,221 and 711.

■ Thus it is conclusively established that the present representation of the member districts on the union board results in differently weighted individual votes, according to the residence of the particular voter within the member districts. This variance in the voting strength of the several school districts violates the Equal Protection Clause of the Fourteenth Amendment. *Reynolds v. Sims*, 377 U.S. 533, 568, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). The constitutional guarantee of equal voting strength and its protection against dilution of the right to vote by disproportionate representation extend to the election of local school officials who exercise general governmental powers. *Hadley v. Junior College District*, 397 U.S. 50, 53, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970).

■ The defendants contend that these decisions are not applicable to the Mount Anthony Directors, on the premise that the union board does not perform functions sufficiently legislative in nature to come within the rule. On this contention, the defendants urge that the precedent set in Vermont by *Leopold v. Young*, 340 F.Supp. 1014 (D.Vt.1972), (Champlain Valley Union High School District reapportioned), and *Watts v. Harwood Union School Board*, No. 6653 (D.Vt. Dec. 10, 1973), (Harwood Union School District reapportioned), is not governing. In support of this argument, the defendants point out that the Mount Anthony Directors do not have the power to levy and collect taxes, issue bonds, annex school districts, or acquire property by condemnation. Since the individual voters of the Union District have the power to approve or reject the budget, the authority to lease and purchase real property and borrow money, the defendants argue that the election of the union school directors is not required to comply with the rule of *Hadley*. The argument is not persuasive. No facts are present to distinguish or remove this controversy from the Court's prior decisions in *Leopold* and *Watts*.

Since the powers of the electorate and those of the school directors in union school districts are not specifically defined in the enabling legislation authorizing the formation of these governmental units, the provisions of the general school law apply. 16 V.S.A. § 701a. [Added 1967, No. 277 (Adj. Sess.), § 4, eff. July 1, 1968.][1] Under the general school law, by the provisions of 16 V.S.A. § 562, the electorate of Mount Anthony Union at a meeting of the district may exercise all the powers referred to by the defendant. At the annual meeting the electorate is required to elect directors of the district and vote a sum of money necessary to maintain the school. However, the determination of how the voted funds shall be expended is entrusted to the school board. 16 V.S.A. § 562(8).[2] For history of

1. 16 V.S.A. § 706q(a) provides that the power of a board of directors of a union school district shall be like those of a board of school directors of a town school district.

2. § 562. *Powers of electorate*
    At a school district meeting the electorate:
    (1) Shall conduct meetings in accordance with Roberts Rules of Order, unless other rules of order are specifically adopted at a meeting;
    (2) Shall elect a moderator at the annual meeting who shall preside at the district meetings, regulate the business thereof, decide questions of order, and make a public declaration of every vote. He may administer oaths to district officers and newly elected school board members. In his absence a moderator pro tempore shall be chosen to preside;
    (3) Shall elect a school district clerk at the annual meeting who shall keep a true record of all proceedings at each district meeting, certify its records, make an attested copy of any records of the district for any person upon request and tender of reasonable fees therefor, if so appointed serve as secretary of the school board, and perform such other duties as may be required by law;
    (4) May authorize the school board to retain a public accountant, licensed in this state, to examine the accounts of the treasurer and the school board at the close of each fiscal year and at such other times whenever necessary, and report to the district whether the same are correctly cast and properly vouched;
    (5) May vote annual salaries for school board members;
    (6) May authorize the payment of actual and necessary expenses of school board members when traveling in the performance of duty;

expansion of powers of school directors *see Buttolph v. Osborn*, 119 Vt. 116, 121, 119 A.2d 686 (1956).

Beyond the provisions of section 562, the powers of the school board are more specifically defined and generously delegated by 16 V.S.A. § 563, including the mandate to "(E)xercise the general powers given to a legislative branch of a municipality." [3] The

(7) May authorize the school board to enter into leases of real or personal property for more than three years, to purchase buildings or sites for school purposes, to locate and erect schoolhouses, and to sell, or otherwise dispose of, schoolhouses or sites for same;

(8) Shall vote at each annual school district meeting a sum of money necessary for the support of public schools; and the board shall determine how the voted funds shall be expended;

(9) May authorize the school board to borrow money by issuance of bonds, or notes not in excess of anticipated revenue for the school year;

(10) Shall elect school board directors and other officers as are required for each class of school district.—Added 1969, No. 298 (Adj.Sess.), § 39, eff. July 1, 1970.

(11) May authorize its board of school directors to make available school facilities and equipment for specified public purposes if those purposes appear to be in the best interests of the residents of the district, due consideration being given to efficient, economical and appropriate use of the facilities and equipment.—Amended 1975, No. 192 (Adj. Sess.), § 3.

3. § 563. *Powers of school boards*

The school board of a school district, in addition to other duties specifically assigned by law, shall:

(1) Determine the educational policies of the school district, and prescribe rules and regulations for the conduct and management of the public schools in the district. Such rules and regulations shall be of general application to the district, shall be in writing, codified, and made available to the public.

(2) Have the power to take any action, which is required for the sound administration of the school district. The commissioner, with the advice of the attorney general, upon application of a school board, shall decide whether any action contemplated or taken by a school board under this subsection is required for the sound administration of the district and is proper under this subsection. His decision shall be final.

(3) Subject to the authority vested in the electorate or any school district official, have the possession, care, control and management of the property of the school district.

(4) Adopt regulations at a regularly scheduled school board meeting, after notice of the board's intent to do so published in the manner required for a school district meeting, stating the substance of the proposed regulations.

(5) Keep the school buildings and grounds in good repair, suitably equipped, insured and in safe and sanitary condition at all times.

(6) Have discretion to furnish more than twelve years of instruction to pupils.

(7) May relocate or discontinue use of a schoolhouse or facility, subject to the provisions of section 821 and section 822 of this title.

(8) Examine claims against the district for school expenses and draw orders for such as shall be allowed by it payable to the party entitled thereto. Such orders shall state definitely the purpose for which they are drawn. However, it shall be lawful for a school board to submit to its treasurer a certified copy of those portions of the board minutes, properly signed by the clerk and chairman, or a majority of the board, showing all bills approved for payment by the board and clearly showing to whom, and for what purpose each payment is to be made by the treasurer, and such certified copy shall serve as full authority to the treasurer to make the payments as thus approved. Nothing contained in this subsection shall preclude the use of a voucher system, or any other system of sound accounting and business procedure, provided that such system reflects the facts, and that the same is in accordance with regulations prescribed by or approved by the state board.

(9) Establish with the advice and consent of the auditor of accounts and the commissioner, a system of accounts for the proper control of school district finances and for stating the annual financial condition of the school district.

(10) Not less than fifteen days prior to the district's annual meeting, prepare and distribute to the electorate a report of the conditions and needs of the district school system, including the superintendent's and treasurer's annual report, for the previous school year, and an auditor's report prepared pursuant to section 1683 of Title 24.

(11) Annually prepare and include in the annual report a budget for the next school year according to such major categories as may from time to time be prescribed by the commissioner.

(12) Upon prior recommendation by the superintendent employ and dismiss such persons as may be required to carry out the work of the school district.

(13) Annually, on or before August 5, prepare a report for the school district containing, on forms prescribed and furnished by the

broad power conferred to the local school boards by grant of the Vermont Legislature is sufficiently governmental in nature to require the application of the one person, one vote principle. *Leopold, supra; Watts, supra; Baker v. Regional High School District,* 520 F.2d 799 (2d Cir., 1975).

Although the U.S. Supreme Court initially determined the application of this rule to local governmental bodies on the basis of whether the functions they performed were administrative as opposed to legislative, *see Sailors v. Board of Education,* 387 U.S. 105, 110, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967), it soon recognized that these generic labels served little purpose in actually defining the powers and actions of a governmental body. *See Avery v. Midland County,* 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968); *LoFrisco v. Schaffer,* 341 F.Supp. 743, 747 (D.Conn.1972). The test which the Supreme Court utilized in *Hadley, supra,* 397 U.S. at 54, 90 S.Ct. at 794, was whether the board performed

"important governmental functions within the districts . . . (and possessed)

powers . . . general enough (with) . . . sufficient impact throughout the district to justify the conclusion that (the one person, one vote rule) . . . should also be applied here."

Applying this test to the powers of the defendants and the impact of their exercise of those powers on the people of the Mount Anthony Union School District, we conclude that the defendants' functions are patently general enough and have a sufficient impact on the residents within the District to justify the application of the one person, one vote rule. The fact that the voters have the authority to approve the budget and authorize various transactions, such as the purchase or lease of land and the borrowing of money, does not require a contrary conclusion. *Baker v. Regional High School District, supra,* 520 F.2d at 801.[4]

■ The second contention advanced by the defendants to distinguish *Leopold, Watts* and *Hadley,* is that the present method of apportionment was agreed upon by the voters of the member districts as a condition to their vote to join the Mount Anthony Union District.[5] The defendants

commissioner, a classified statement under oath of the actual cash expenditures of the school district for the preceding school year for school purposes, and such other information as the commissioner prescribes. Such report shall be prepared in triplicate, one copy shall be retained by the superintendent, and one copy shall be sent to the school district clerk and the other sent to the commissioner on or before August 15. A district shall not be entitled to receive any portion of school money distributed by the state unless such returns are made.

(14) Provide, at the expense of the district, subject to the approval of the superintendent, all text books, learning materials, equipment and supplies.

(15) Exercise the general powers given to a legislative branch of a municipality.

(16) By its chairman, or any person designated by him whose appointment is recorded in the minutes of the board, execute contracts on behalf of the school district.

(17) Upon authorization by the electorate, employ a public accountant to audit the financial affairs of the school district and prepare the annual financial report. If a public accountant is employed, his report shall be included in the annual report.

(18) [Repealed.]—Added 1969, No. 298 (Adj.Sess.), § 40, eff. July 1, 1970; amended 1971, No. 200 (Adj.Sess.).

4. From the text: "On the question whether the board is governmental in character, appellants make much of the powers which the school boards lack. By reading *Hadley v. Junior College District* as narrowly as possible, they maintain that, since the Connecticut regional boards lack the powers to levy and collect taxes and to issue bonds, then their powers are not sufficiently broad or general to be governmental. But as Judge Newman recognized in his opinion below, '[t]he proper question is rather whether the power the Boards do have, in fulfilling what "has traditionally been a vital governmental function," *Hadley v. Junior College District,* 397 U.S. at 56, 90 S.Ct. 791, make it reasonable to describe the board members as "government officials in every relevant sense of the term." *Ibid.*'" *Baker v. Regional High School District, supra,* 520 F.2d at 801.

5. Defendants' Exhibit A, Warning for Meeting of Greater Bennington Schools, Inc., indicates that there were to be two directors from each member district. Apparently at that time, two districts from Bennington, the Bennington Graded School District, Inc., and the Greater Bennington School District, Inc., were included in the proposed union district. This seems to

850

have submitted the affidavits of various members of the electorate who state under oath that they would have voted against the formation of the Mount Anthony Union District had each district not been accorded the present number of representative school directors.

■ The defendants contend that the vote of the member districts to join the union high school district as approved by the state board of education and the secretary of state, according to the enabling legislation then in effect, constitutes a corporate charter that is inviolate to subsequent legislative or judicial action. The notion is misconceived. Charters granted by the states to subordinate political subdivisions are not contracts within the protection of the Contract Clause. *Trenton v.*

*New Jersey,* 262 U.S. 182, 187–188, 43 S.Ct. 534, 67 L.Ed. 937 (1923); *Hunter v. Pittsburgh,* 207 U.S. 161, 178–179, 28 S.Ct. 40, 52 L.Ed. 151 (1907).

The exclusion of municipal charters from federal constitutional protection is in keeping with the express exception of the Constitution of Vermont.

No charter of incorporation shall be granted, extended, changed or amended by special law, except for such municipal, charitable, educational, penal or reformatory corporations as are to be and remain under the patronage and control of the state; . . . . Vt.Const. Ch. II, § 69.[6]

A similar contention was rejected in the *Leopold* case on the strength of the concept expressed by Chief Justice Warren in *Lucas*

explain Bennington's present representation of four directors. Subsequently, Woodford voted to join the union district with one representative director.

6. Although a contract approved by the Vermont Commissioner of Education and Secretary of State exists between the member districts under 16 V.S.A. § 571 (1974), the Court finds no enforceable charter contract within the meaning of U.S.Const. art. I, § 10 between the State and the individual districts. In Vermont, "[E]ducation is a function of the state as distinguished from local government." *Buttolph v. Osborn,* 119 Vt. 116, 119, 119 A.2d 686, 688 (1956). Under the various Chapters of Title 16 V.S.A., the State has seen fit to grant various powers to the local districts, including the power to agree to form union districts. But, as in the case of a municipal corporation, the State may, within certain limits "[A]t its pleasure . . . modify or withdraw all such powers . . . ." *Hunter v. Pittsburgh, supra,* 207 U.S. at 178, 28 S.Ct. at 46 (1907). Since the charter of the Mount Anthony Union High School District is not a contract with the State within the meaning of the Federal Constitution, *Hunter, supra,* there can be no unconstitutional impairment as a result of reapportioning the Board:

That the framers of the constitution did not intend to restrain the states in the regulation of their civil institutions, adopted for internal government, and that the instrument they have given us, is not to be so construed, may be admitted . . . . If the act of incorporation be a grant of political power, if it creates a civil institution, to be employed in the administration of the government, or if the funds of the [school] be public property . . . the subject is one in which the legis-

lature of the state may act according to its own judgment, unrestrained by any limitation of its power imposed by the constitution of the United States. *Trustees of Dartmouth College v. Woodward,* 17 U.S. (4 Wheat.) 518, 628–629, 4 L.Ed. 629 (1819).

Nor does the Court find any impairment of any bondholder's contract by reapportionment since the representation provided for each member district is not a condition of the contract between the bondholder and the Mount Anthony Union District.

The defendants also contend that 16 V.S.A. § 706e (Supp.1975) which permits election of school directors at large and 16 V.S.A. § 721a regulating withdrawal from a union district, violate the Impairment of Contracts Clause, U.S.Const. art. I, § 10. On this basis, the defendants have sought to join Thomas P. Salmon, Governor of the State of Vermont, M. Jerome Diamond, Attorney General of the State of Vermont, Robert A. Withey, Commissioner of Education for the State of Vermont, and Richard C. Thomas, Secretary of the State of Vermont, claiming that they are necessary parties to this litigation in the event that the Court declares 16 V.S.A. § 706e (Supp.1975) and § 721a (1974) unconstitutional.

V.R.Civ.P. 24 provides for notice to the Attorney General when the constitutionality of a Vermont statute is questioned. Thereafter, the Attorney General may intervene in the case as a matter of right if he wishes to do so. However, there is no necessity for this Court, by motion of the defendants, to join the Attorney General or any other state official simply because the constitutionality of a Vermont statute is under attack. Consequently, the defendants' motion to do so is denied.

*v. Forty-Fourth General Assembly,* 377 U.S. 713, 736–737, 84 S.Ct. 1459, 1473, 12 L.Ed.2d 632 (1964):

> An individual's constitutionally protected right to cast an equally weighted vote cannot be denied even by a vote of a majority of a State's electorate, if the apportionment scheme adopted by the voters fails to measure up to the requirements of the Equal Protection Clause. Manifestly, the fact that an apportionment plan is adopted in a popular referendum is insufficient to sustain its constitutionality or to induce a court of equity to refuse to act. . . . A citizen's constitutional rights can hardly be infringed simply because a majority of the people choose that it be. We hold that the fact that a challenged legislative apportionment plan was approved by the electorate is without federal constitutional significance, if the scheme adopted fails to satisfy the basic requirements of the Equal Protection Clause . . . .

That precept is controlling here. *Accord, Powers v. Maine School Administrative District,* 359 F.Supp. 30, 34–35 (D.Me.1973) (Gignoux, *J.*).

The fact that the member districts voluntarily joined the Union District in reliance upon representation by an agreed number of directors on the Union Board cannot now justify the denial of the plaintiffs' fundamental right to a fair ballot. Similarly, the agreement of a majority of the voters of the Bennington member district to the dilution of their vote in the election of the union school board cannot constitutionally deprive the minority of the voters in that district of their right to fair and adequate representation on the governing board of the Mount Anthony Union High School District. *Leopold* and *Powers, supra.*

Accordingly, it is hereby ORDERED:

1. *The plaintiffs' motion for summary judgment is granted;*
2. *The defendants' motion to bring in third-party defendants is denied;*
3. *The defendants shall submit to the Court within 60 days, unless the period is enlarged by further order, a plan to reapportion the Board of Directors of the Mount Anthony Union High School District in accordance with the principles of equal protection stated in the Court's opinion;*[7] *and*

---

**7.** At oral argument, the defendants' counsel contended that under present Vermont law requiring no more than 18 directors, there was no way to apportion the Mount Anthony District Directors.

Title 16 V.S.A. § 706b states as follows:

> When a planning committee is appointed, its chairman shall notify the commissioner of education, who shall then cooperate with the planning committee and may make available the staff of the department of education in the conduct of a study of the proposed union school district. The planning committee shall prepare a report in the form of an agreement between member districts for the government of the proposed union. The report shall specify:
>
> (1) the school districts the committee considers necessary to the establishment of the proposed union;
>
> (2) the additional school districts the committee considers advisable to be included in the proposed union;
>
> (3) the class of schools to be operated;
>
> (4) the cost and general location of any proposed new schools to be constructed;
>
> (5) the transportation, teaching staff, and curriculum to be provided;
>
> (6) the indebtedness of proposed member districts which the union shall assume;
>
> (7) the specific properties of proposed member districts which the union is to acquire, their valuation, and how the union shall pay for them;
>
> (8) the allocation of capital and operating expenses of the union among member districts;
>
> (9) the method of apportioning the representation which each proposed member district shall have on the union school board. The union school board shall have no more than eighteen members, and each member district shall be entitled to at least one representative;
>
> (10) the term of office of directors initially elected shall be arranged so that one-third expire on the day of the second annual meeting of the respective districts, one-third on the day of the third annual meeting of the respective districts and one-third on the day of the fourth annual meeting of the respective districts, or as near to that proportion as possible;
>
> (11) the date on which the union proposal will be submitted to the voters; and
>
> (12) any other matters which the committee considers pertinent.

4. *The Court will retain jurisdiction pending submission of the plan.*

## SUPPLEMENTAL MEMORANDUM AND ORDER

▆ In keeping with this court's order of August 13, 1975, and following the termination of the stay imposed, pending the appeal to the Circuit Court of Appeals, the defendants have submitted a plan to reapportion the Board of Directors of the Mount Anthony Union High School District No. 14. The plan, in its amended form, was finally presented to the court on June 18, 1976. It provides for the election of the board of directors of the Mount Anthony Union High School District No. 14 by the vote of the qualified voters of the union-wide electorate. The constituency of the several member districts is engaged only for the purpose of establishing the method of nomination. The local member districts function ". . . merely as the basis of residence for candidates, not for voting or representation." *See Dusch v. Davis,* 387 U.S. 112, 115, 87 S.Ct. 1554, 1556, 18 L.Ed.2d 656 (1967). Their tenure of office depends on the vote of the electorate of all the combined member districts. Since the entire union is the source of the authority of each and all directors, they are called upon to serve all the people in the union district, not merely the citizenry who reside in the district from which they were nominated. *Dallas County, Alabama v. Reese,* 421 U.S. 477, 479, 95 S.Ct. 1706, 44 L.Ed.2d 312 (1975). When the proposed plan for reapportionment of the union district becomes effective, its operation will not offend the Equal Protection Clause of the Fourteenth Amendment and should protect the equal voting strength of all the voters in the union district in compliance with the court's prior order. Accordingly, the court accepts and approves the plan with variations consistent with the court's order of reapportionment and the requirements of Title 16, Vermont Statutes Annotated § 706e, as to the method of nomination.

It is ORDERED:

1. The Board of Directors of the Mount Anthony Union High School District No. 14 shall be composed of eleven members, elected at large by Australian ballot by all the qualified voters residing in the union district. The election of the directors for the union school district shall be held within 120

---

At the time of the formation of the Mount Anthony Union School District in 1962, 16 V.S.A. § 614 was in effect. That section read as follows:

(a) At the organization meeting, or at an adjournment thereof, the district shall elect by ballot a moderator, a clerk, a board of school directors, as hereinafter stipulated, treasurer and three auditors, who shall hold their respective offices until others are elected and qualify following the first annual meeting.

(b) The total number of school directors and the number from each member district may be agreed upon by the several member districts in advance of the organization meeting or in the absence of such agreement shall be set by the organization meeting at not less than three nor more than eleven directors, including at least one from each member district.

(c) School directors elected at the organization meeting or at any subsequent meeting of the union district shall be elected from nominations made by the several member districts at their most recent annual or special meeting, if such nominations have been made. Likewise, if an alternate school director has been nominated by any member district said alternate school director shall be elected by the union district to serve in the absence of his principal.

(d) When there is only one nominee for any of the aforementioned offices, the voters may, by acclamation, instruct an officer to elect said nominee by casting one ballot, and upon such ballot being cast, such nominee shall be declared to be legally elected.

Title 16 V.S.A. § 614 was repealed and 16 V.S.A. § 706c added 1967, No. 277 (Adj.Sess.) §§ 8, 39 eff. July 1, 1968.

If the statutory provision is entitled to the construction suggested by the defendants, its application cannot contravene the constitutional demands of equal protection. In any event, at this stage of the proceedings, the Court is not called upon to rule on the applicability of the § 706b(9) limitation prior to the submission of the plan as herein directed. It should be noted that it appears possible to devise a plan of apportionment which will comport with the requirements of § 706b(9) and the dictates of equal protection as enunciated herein, such as one requiring weighted voting, or of election of directors-at-large, as provided in 16 V.S.A. § 706e (Supp.1975).

days from the date of this order. The board, as presently constituted, shall continue to function until reapportionment has been accomplished as herein provided.

2. The defendants shall take the necessary administrative steps to accomplish the following:

a. Nominations for the office of union school director shall be made by filing with the clerk of the member district a statement of nomination, signed by the voters of the member district, equal in number to at least one percent of the entire vote cast for governor in that member district in the last general election. The statement of nomination shall be accepted in writing by the nominee. The statements of nomination shall be filed with the clerk of the member district within sixty (60) days of the filing of this order.

b. Within ten (10) days after the receipt of statements of nominations by the clerks of the member districts, the clerks shall deliver the statements to the clerk of the Mount Anthony Union High School District No. 14.

c. Within ten (10) days of the receipt of the statements of nominations from the clerks of the member districts, the clerk of Mount Anthony Union High School District shall call a special meeting of the union district to be held no less than thirty (30) nor more than forty (40) days thereafter, for the election of the Mount Anthony Union High School directors from the nominations made by the member districts.

3. The total number of directors to be elected by the voters at large in the union district shall be eleven (11), and will be constituted as follows:

a. Four (4) union school directors shall be elected from the nominations received from the clerk of the member district of Bennington for the following terms of office: one (1) to expire in 1977; two (2) to expire in 1978; one (1) to expire in 1979.

b. Two (2) union school directors shall be elected from the nominations received from the clerk of the member district of Shaftsbury for the following terms of office: one (1) to expire in 1978; one (1) to expire in 1979.

c. Two (2) union school directors shall be elected from the nominations received from the clerk of the member district of Pownal for the following terms of office: one (1) to expire in 1977; one (1) to expire in 1979.

d. Two (2) union school directors shall be elected from the nominations received from the clerk of the member district of North Bennington for the following terms of office: one (1) to expire in 1977; one (1) to expire in 1978.

e. One (1) union school director shall be elected from the nominations received from the clerk of the member district of Woodford for the following term of office: one (1) to expire in 1979.

4. The ballots for election of the union school directors shall plainly designate the number of directors to be elected from the nominations received from the several member districts by providing a separate ballot for the nominations received from each member district or by listing the nominations by separate and discrete groupings according to the source from which the nomination was received.

5. The terms of office for each union director elected at the annual meetings in 1977 and thereafter shall be for a term of three (3) years, in the manner herein provided and until further order of this court.