**TOWNSHIP OF MARLBORO,**
et al., Plaintiffs,

v.

**THE BOARD OF EDUCATION OF the FREEHOLD REGIONAL HIGH SCHOOL, et al., Defendants.**

Civil Action No. 97–5401.

United States District Court,
D. New Jersey.

Feb. 4, 1998.

·James S. Rothschild, Jr., Riker, Danzig, Scherer, Hyland & PerrettiMorristown, NJ, Stuart J. Moskovitz, Manalapan, NJ, for Plaintiff Township of Marlboro, Marcus & Greenstein.

Robert F. Munoz, Lomurro, Davison, Eastman & Munoz, Freehold, NJ, for Plaintiff Township of Manalapan & Bachman.

Paul K. Hennessy, Brian D. Lieberman, Waters, McPherson, McNeill Secaucus, NJ, for Defendant Board of Education of Freehold Regional High School.

John K. Worthington, Office of the New Jersey Attorney General, Trenton, NJ, for Defendants Maddaluna & Klagholz.

Howard M. Newman, Kalac, Newman, Lavender & Campbell Neptune, NJ, for Defendant Colts Neck.

### *OPINION*

WOLIN, District Judge.

The issues presented by this declaratory judgment action demonstrate how application of a constitutional principle in a doctrinaire manner, while promoting one community interest, will disserve a competing community interest. At stake is the application of the "one-person, one-vote" principle to a limited regional school board. While the passage of time and the shift of population mandates a weighted vote, the implementation of that vote must not eliminate the meaningful dialogue that has permitted this regional school district and its constituent municipalities to achieve a standard of formidable success.

While the Court will declare N.J. Stat. Ann. 18A:13–8 unconstitutional as applied to the Freehold Regional High School District ("District"), it is unwilling to apportion the votes in the manner suggested by the plaintiffs, an apportionment that would deprive five of the eight municipalities an equal voice in the District's affairs.

In the interim, the Court will call upon the New Jersey State Legislature to implement a weighted voting measure that satisfies con-

stitutional precepts and is fundamentally fair to all concerned. Because a legislative resolution requires a period of reflection and is incapable of an immediate answer, the Court will request that the Commissioner of Education or his designee at this time apportion the weighted vote.

## PROCEDURAL HISTORY

This case is before the Court on cross-motions for summary judgment. All of the parties agree that no genuine issue of material fact exists and that the issues presented may be resolved as a matter of law. Because the Complaints of the Township of Marlboro and the Township of Manalapan were independently filed and contain claims and relief that are mirror images of each other, the Court for purposes of expediency will consolidate them. Moreover, the Court will grant Colts Neck's motion to intervene.

## BACKGROUND

This case arises out of a civil dispute between the plaintiffs the Township of Marlboro, Marcus, Greenstein, the Township of Manalapan, Bachman, and the defendants the Board of Education of the Freehold Regional High School, Maddaluna, and Klagholz.

### Creation of the District

By the authority of N.J. Stat. Ann. 18A:13–8,[1] the District was formed in 1954. (*See* Moskovitz O.T.S.C. Cert. ¶ 2.) In accordance with the governing law at that time, approval of the formation of the District was required by the residents of each town. (*See* District Undisputed Facts ¶ 3.) "The public referendum on this issue received a[sic] overwhelming majority of votes in each" town. (*Id.*)

The municipalities of Englishtown Borough, Howell Township, Manalapan, Freehold Township, Freehold Borough, Farmingdale Borough, and Colts Neck Township, all located in Monmouth County, joined with Marlboro, a municipal corporation also located in Monmouth County, New Jersey, to form the District for the purpose of creating public high schools for the education of the eight municipalities' residents.[2] (*See* Complaint ¶ 1.) The District agreed to locate the regional school in the Borough of Freehold, using the present site and existing facilities. (*See* Saylor Aff. Exh. F (Committee Report issued after a 11/14/52 Committee meeting).) Each municipality contributed to the purchase of the site and existing high school. (*See id.*) In order to house all the students in the regional area, the District envisioned a school of at least double the facilities of the Freehold High School. (*See id.*) The school districts comprising the regional school districts all bore a proportionate share of the debt service. (*See id.*)

In 1952, Freehold Borough represented 43% of the student population, and the remaining municipalities represented 57% of the student population. (*See* District Br. at 9.) These percentages would change as the other municipalities developed. (*See id.*)

The Board is comprised of nine members. (*See* Complaint ¶ 11.) In accordance with the New Jersey statutes then in effect, each municipality was required to have at least one member. (*See* District Br. at 10 (citing N.J. Stat. Ann. 18:8–5).) The Court notes that the statute did not mandate one vote for each member. Notwithstanding the statute's silence as to the right to vote, the District's residents were "advised that each municipali-

---

1. New Jersey Statutes Annotated 18A:13–8 provides, in relevant part:

    The board of education of a regional district shall consist of nine members unless it consists of more than nine constituent districts.... If there are nine or less constituent districts, the members of the board of education of the regional district shall be apportioned by the county superintendent or county superintendents of the county or county in which the constituent districts are situate, among said districts as nearly as may be according to the number of their inhabitants except that each constituent district shall have at least one member.

N.J. Stat. Ann. 18A:13–8 (West Supp.1997).

2. Among other things, the "regional district was formed by an affirmative referendum in each constituent district by which each agreed to join with all of the others in a new district for purposes of secondary education." (District Br. at 11 (quotation omitted).) The District in the current case is defined as a "limited purpose regional district" created "to provide and operate in the territory comprised within such districts one or more of the following: elementary schools ... high schools...." N.J. Stat. Ann. 18A:13–2(b).

ty would elect at least one representative with one vote to the Board." (*See id.* (citation omitted).) Each Board member's vote is currently given equal weight. (*See* Plfs.' O.T.S.C. Memo at 3.) Operation of all public schools in Monmouth County, including the District, is overseen by defendant Maddaluna, the Monmouth County Superintendent of Schools. (*See* Complaint ¶ 5.) As the Commissioner of Education, Klagholz is, and at all relevant times, was responsible for the administration of all New Jersey public schools. (*See id.* ¶ 6.)

Each of the eight municipalities which form the District is deemed a district, and each municipality elects one member to the Board. However, because the largest population of the eight towns belongs to Howell Township, the ninth seat is also occupied by a representative from Howell Township. (*See* Moskovitz O.T.S.C. Cert. ¶ 3.) In her certification, Harriet M. Strickler, Principal Planner of the Monmouth County Planning Board's Demographics Publication Section, sets forth that the total population of the eight towns comprising the District is 140,418. (*See id.* ¶ 4.) According to the 1990 federal census, the population of each district, and the commensurate percentages of the total population, of the District is as follows:

| | | |
|---|---|---|
| Howell Township | 38,987 | 27.8% |
| Marlboro | 27,974 | 19.9% |
| Manalapan | 26,716 | 19.0% |
| Freehold Township | 24,710 | 17.6% |
| Freehold Borough | 10,742 | 7.7% |
| Colts Neck Township | 8,559 | 6.1% |
| Farmingdale Borough | 1,462 | 1.0% |
| Englishtown Borough | 1,268 | 0.9% |

(*See* Complaint ¶ 13; Moskovitz O.T.S.C. Cert. ¶ 5.) With the exception of Howell Township, each of the towns has one representative despite the above divergent percentages. (*See* Moskovitz O.T.S.C. Cert. ¶ 6.) "Projected estimates for 1997 indicate that the proportion of the total population of the eight towns remains reasonably steady from 1990, except that Marlboro has a mathematically increased percentage and Freehold Borough has a mathematically decreased percentage." (Strickler O.T.S.C. Cert. ¶ 5.) Marlboro's percentage of population has increased to 20.8%, Freehold Town-

ship's percentage of population has increased to 18.1%, and Manalapan's percentage has increased to 19.1%, while Freehold Borough's percentage of population has decreased to 6.5%, and Farmingdale's percentage has decreased to 0.9%. (*See* Moskovitz O.T.S.C. Cert. ¶ 7.)

With the exception of Howell's 22% of the voting power, each of the eight towns has a voting power on the Board of 11%, notwithstanding the wide differences in percentage of population. (*See id.* ¶ 8.) The plaintiffs set forth that, "on a strict population basis, when the 1990 census percentages are calculated against a nine-vote Board and rounded to the nearest tenth of a vote," each of the towns should have the following votes:

| | |
|---|---|
| Howell Township | 2.5 |
| Marlboro | 1.8 |
| Manalapan | 1.7 |
| Freehold Township | 1.6 |
| Freehold Borough | 0.7 |
| Colts Neck Township | 0.5 |
| Farmingdale Borough | 0.1 |
| Englishtown Borough | 0.1 |

(*Id.* ¶ 9; Complaint at 6.) Accordingly, based on the 1990 census' total population of 140,418 for the eight towns, 15,602 people should be represented by each of the nine seats. (*See* Moskovitz O.T.S.C. Cert. ¶ 10.) However, currently, Englishtown Borough's seat represents 1,268 people, Farmingdale Borough's seat represents 1,462 people, while Marlboro's seat represents 27,974 people, and Manalapan's seat represents 26,716 people. (*See id.* ¶ 11.)

Based on the 1990 census, Manalapan's divergence from the norm is 71.2% under represented, and Marlboro's deviation from the norm is 79.3% under represented. In contrast, Englishtown and Farmingdale's deviation from the norm is 91.9% and 90.6% over represented, respectively. (*See* Moskovitz O.T.S.C. Cert. ¶ 12.) The plaintiffs maintain that these deviations result in a maximum total deviation from the norm of 171.2%, or 17 times the maximum allowable divergence suggested by the New Jersey Supreme Court. (*See id.* (referring to *Franklin Township v. Board of Educ. of N. Hunterdon High School,* 74 N.J. 345, 378 A.2d 218 (1977), *cert. denied,* 435 U.S. 950, 98 S.Ct. 1576, 55 L.Ed.2d 800 (1978)).) Using

the 1997 estimated population figures, the norm deviation is markedly increased, with Englishtown being over represented by 92.1% and Marlboro being under represented by 87.2%, for a total deviation of 179.3% from the norm. (*See id.* ¶ 14.) In effect, the Marlboro seat possesses approximately 50% of the vote it should be accorded, while the Englishtown seat has over 1000% of the vote to which it is entitled. (*See id.*)

The District provides an educational curriculum more enriching and diverse in comparison to any single high school in New Jersey, which has a "forcefully positive effect on student performance."[3] (*See* District Br. at 12, 13.) Creation of the District has also offered administrative economies and numerous benefits.[4] Perhaps most significantly, the District's per pupil spending cost was the fourth lowest in New Jersey and its per pupil administration cost was the lowest in the State; such fiscal and administrative economies have been acknowledged by the New Jersey Department of Education. (*See id.* at 15.)

## The Current Case

### A. Plaintiffs' Claims

The plaintiffs argue that the Board's voting practice is discriminatory in violation of N.J. Stat. Ann. 18A:13–8 as the voting results in unequal apportionment due to population. The plaintiffs seek reapportionment of the Board to reflect population patterns.

The plaintiffs assert that they are being denied constitutional equal protection and, thereby, are harmed by not being properly

represented on the Board. (*See* Moskovitz O.T.S.C. Cert. ¶ 15.) Plaintiff Greenstein is under represented by a 71.2% deviation from the norm, while Plaintiff Marcus is grossly under represented by a 79.3% deviation from the norm. (*See id.*) "Marlboro itself is harmed in that the interests of its citizens are not being properly addressed due to limited representation far less than its population dictates." (*Id.*)

The plaintiffs maintain that this disproportionate representation has affected Board action in that such action would have had a different outcome had the votes been weighted properly. (*See id.* ¶ 16.) For example, Marlboro, Freehold Township, and Manalapan residents oppose educational policy changes made by the Board, yet any vote to rescind the change was defeated due to the current voting structure; since these representatives were only three of the nine representatives, the resolution was defeated. (*See id.* ¶¶ 17–18; Moskovitz Cert. ¶ 19.) At a later Board meeting, a majority of representatives present voted 4–2 to rescind, but the resolution was unsuccessful given that a majority under the present voting structure (5 votes) failed to vote for rescission.[5] (*See* Moskovitz Cert. ¶ 20 & n. 1.) The plaintiffs allege that the Marlboro, Freehold Township, and Manalapan representatives, "by virtue of the populations of their respective towns, should have been apportioned 57% of the voting power." (Moskovitz O.T.S.C. Cert. ¶ 18.) The plaintiffs charge that the Board is conducting business and passing resolutions

3. The chief methods by which the District offers such a curriculum to its students in each District high school are: (1) Shared Programs, which permit any District student to attend a class at any high school in the District not offered by the student's primary high school; and (2) Special Programs and Specialized Learning Centers, which permit a student to concentrate his studies in a specific educational program. (*See* District Br. at 13 (citation omitted).) As for the latter method, a student may attend the high school housing the Specialized Program/Specialized Learning Center on a full or part-time basis. (*See id.*) Marlboro High School houses the Business Administration Special Program/Specialized Learning Center; Howell the Fine and Performing Arts and The Scholars' Center for Humanities; Freehold Township the International Studies; Freehold Borough the Medical Sciences;

and Manalapan houses Science/Engineering. (*See id.*)

4. *See* District Br. at 13–15 (setting forth examples of District-wide workshops for staff development and staff proficiency in curriculum areas; monthly meetings among department supervisors throughout the District to share ideas and innovations; District-wide sharing of teachers; eligibility for grants; fiscal economies including discounted books and supplies, reduced workshop and faculty development costs, discounted insurance, savings in technology; a 20% discount from all suppliers).

5. A second reading on the vote to rescind was scheduled for a January 5 Board meeting. (*See* Moskovitz Cert. at 6 n. 1.)

which are contrary to the will of the people, "as the direct result of having unconstitutional, disproportionate representation." [6] · (*Id.* ¶¶ 18, 19.)

Hence, the plaintiffs argue that N.J. Stat. Ann. 18A:13–8, as applied, is unconstitutional as it (1) violates the Fourteenth Amendment's Equal Protection Clause [7] given that the plaintiffs' representatives' votes in the District are afforded less weight than they would be through equal apportionment, (2) violates the New Jersey Constitution's Article I, Sections One and Five equal protection guarantees, and (3) deprives individuals of their civil rights pursuant to 42 U.S.C. § 1983. (*See* Complaint ¶¶ 19, 21, 27; Amended Complaint ¶¶ 25, 27, 33.) In a November 25, 1997 resolution, Freehold Township's governing body endorsed and supported the relief sought by Marlboro and Manalapan in these litigations. (*See* District Br. at 1 (citing Saylor Aff. Exh. A)).

**B.  The State Defendants' Contentions**

The State defendants Maddaluna and Klagholz argue that such a system of weighted votes would "produce a board of education with nine votes, but would leave four of the nine members of the regional school district with less than one vote each, and only one-tenth of a vote for two of the members of the district." (*See* State Def.'s Br. at 5.) Consequently, several members of the District would possess little or no authority over the District, which is contrary to the purpose for which the District was formed. (*See id.*)

The State defendants raise a catalog of defenses, including: laches due to Marlboro's longstanding awareness of the voting structure; waiver by the Board members upon knowingly and voluntarily consenting to the creation of the District; Eleventh Amendment and sovereign immunity bars as to the District, Klagholz, and Maddaluna's claims given that the Fourteenth Amendment and 42 U.S.C. § 1983 limit the court's remedial powers against state officers in their official capacity to prospective injunctive relief— state agencies are not considered "persons" for the purposes of suit under § 1983 and the Eleventh Amendment precludes a damages award; violation of the two-year statute of limitations period for failure to appeal the March, 1991 apportionment of votes in a timely manner; and the Court's lack of pendent jurisdiction over the plaintiffs' New Jersey Constitution claims. (*See id.* at 9–21.) In short, the State defendants argue that Marlboro's Complaint should be dismissed but also its claims should be estopped. Perhaps most significantly, the State defendants

---

**6.** By way of support for their summary judgment motion, the plaintiffs provide Denis R. Ditze's Certification to exemplify a weighted voting practice. Ditze is the Acting Superintendent of Schools in the North Hunterdon–Vorhees Regional High School Board of Education ("Hunterdon Board"). (*See* Ditze Cert. ¶ 1.) Since 1979, the Hunterdon Board has implemented a weighted voting system which operates as set forth herein:

  Franklin Township/Clinton Town have 1 representative with 1.5 votes
  High Bridge has 1 representative with 1.2 votes
  Clinton Township/Lebanon Borough have 3 representatives with 1.2 votes each.
  Califon/Tewksbury have 2 representatives with .9 votes each.
  Bethlehem/Hampton/Glen Gardner have 2 representatives with .9 votes each.
  Union Township has 2 representatives with .8 votes each.
  Lebanon Township has 2 representatives with .8 votes each.

(*See id.* ¶ 2.) Ditze sets forth that given the 13.1 total votes, the Hunterdon Board is aware that any motion can be carried by 6.6 votes. (*See id.*)

Further, he maintains that the weighted voting system has not caused any administrative difficulty or inconvenience. "There has been nothing either difficult or complicated about determining how any vote came out or whether or not a particular motion passed or did not pass." (*Id.* ¶ 3.)

**7.** The Fourteenth Amendment provides, in relevant part:

  Section 1. [N]or shall any State ... deny to any person within its jurisdiction the equal protection of the laws. ·
  Section 2. Representative shall be apportioned among the several States according to their respective numbers.... But when the right to vote at any election for the choice of electors for President and Vice President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any ... the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

maintain that each municipality entered into the District knowing that each would receive at least one board member, and that each vote would be equal to the other board members' votes. (*See id.* at 11.)

## C. Defendant District's Contentions

■ The District, similar to the State defendants, argues that because Marlboro has enjoyed for the last forty-four years the substantial educational and economic benefits associated with participation in the District, Marlboro is "constitutionally estopped" from challenging the manner of the District's governance.[8] (*See* District Br. at 22.)

The District further argues that each Board member's entitlement to one vote is in accord with the requirements of N.J. Stat. Ann. 18A:13–1 *et seq.* (*See* District Ans. ¶ 14.) The District disputes that the current case is governed by the Fourteenth Amendment or *Franklin.*[9] (*See id.* ¶ 16.)

In support of the District's due process defense, the District argues that Marlboro's proposed voting scheme would alter the "agreed to political system in its favor, while procedurally denying the other ... [m]unicipalities and their residents an opportunity to be heard on this change and substantively denying their right to effective representation." (District Br. at 28.) Further, the District contends that Marlboro's voting format violates the procedural due process rights of the residents of Colts Neck, Englishtown, Farmingdale, and Freehold Borough by rendering meaningless their vote and, thereby, their representation on the Board, while at the same time blocking their ability to unilaterally withdraw from or seek dissolution of the District pursuant to N.J. Stat. Ann. 18A:13–51 *et seq.*[10] (*Id.* at 30.) Further, once these municipalities are in con-

trol, they will never consent to any reapportionment scheme that will detract from their control. (*See id.* at 43 n. 9.)

The District frames Marlboro's equal protection claim as a means by which · to "perpetrate a racially-motivated scheme to segregate its high school age children from minority students within the District—particularly the minority population resident in Freehold Borough." (District Br. at 34.) Consequently, the substantive due process doctrine is implicated because racial bias, improper motive, and bad faith motivate the intended state action, and thereby mandate denial of Marlboro's summary judgment motion and dismissal of its Complaint. (*See id.* at 35.)

## DISCUSSION

■ This Court's jurisdiction over the current case arises under 28 U.S.C. § 1331 as the action implicates the United States Constitution. (*See* Complaint ¶ 7.) Administrative remedies need not be exhausted when the Court is confronted with a constitutional question. Each party moves for summary judgment.

### Summary Judgment

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the burden of demonstrating that there is no genuine issue as to any material fact. *See Celotex Corp. v. Catrett,* 477 U.S.

---

8. The constitutional estoppel doctrine instructs that a party "may not retain the benefits of a statute or regulations while attacking the constitutionality of one of its provisions." (District Br. at 22 (quoting *United States v. San Francisco,* 310 U.S. 16, 29, 60 S.Ct. 749, 84 L.Ed. 1050 (1940).))

9. Holding that the Fourteenth Amendment's prohibition against states from denying a citizen equal protection under the laws was explicitly applicable to voting rights in New Jersey's regional high school districts. *See Franklin Town-*

*ship v. Board of Educ. of N. Hunterdon Reg'l High School,* 74 N.J. 345, 378 A.2d 218 (1977), *cert. denied,* 435 U.S. 950, 98 S.Ct. 1576, 55 L.Ed.2d 800 (1978).

10. Withdrawal from the District cannot be unilateral. Withdrawal from a regional district requires "an affirmative vote of a majority of the votes cast within the withdrawing constituent district" and "an affirmative vote of a majority of the overall votes cast in the entire regional district." N.J. Stat. Ann. 18A:13–59.

317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where a summary judgment motion is properly made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). If the adverse party fails to respond with a showing that there is a genuine issue for trial, "summary judgment, if appropriate, shall be entered against the adverse party." *Id.* In making this determination, the Court must draw all reasonable inferences in favor of the non-movant. *See National State Bank v. Federal Reserve Bank of New York,* 979 F.2d 1579, 1581 (3d Cir.1992).

The Court's function at the summary judgment stage of litigation is to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of material fact is genuine if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *See id.; Coolspring Stone Supply, Inc. v. American States Life Ins. Co.,* 10 F.3d 144, 148 (3d Cir.1993). Absent evidence sufficient to permit a jury to return a verdict for the non-moving party, there is no issue for trial, and summary judgment must be granted. *See Anderson,* 477 U.S. at 249. The issues presented in this case are appropriate for disposition by summary judgment.

**The Statute as Applied is Unconstitutional**

■ The critical inquiry to be determined by this Court is whether the involved statute, N.J. Stat. Ann. 18A:13–8, as applied, is constitutionally infirm. The Court holds that the statute as applied is unconstitutional. This infirmity arises from the failure to apportion school board votes in contravention of the well established principle of "one person, one vote."

■ The seminal case of *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) held that a qualified voter has a constitutional right to vote in a state legislative election without having his vote wrongfully denied, debased, or diluted; "[f]ull and effective participation by all citizens in state government requires ... that each citizen have an equally effective voice in the election of members of his state legislature." *Id.* at 1383. The United States Supreme Court has consistently applied the constitutional principle of "one man, one vote"—giving approximately [11] equal weight to each vote cast—to congressional, state legislative, and local elections. *See Hadley v. Junior College Dist. of Metro., Kansas City, Missouri,* 397 U.S. 50, 54, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970) (applying the principle to the office of junior college trustee) (citing, in part, *Wesberry v. Sanders,* 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964) (congressional election); *Avery v. Midland County,* 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968) (Texas county commissioners)). However, the "one person, one vote" principle was determined to have no relevancy to a county board appointed by a popularly elected local board where the county board's functions were essentially administrative. *See Sailors v. Board of Educ. of the County of Kent,* 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967). The fact that the county board did not perform legislative functions cornerstoned the Court's reasoning. *See id.,* 387 U.S. at 110. In contrast, the parties in the current case are in agreement that the Board's functions are a combination of legislative or governmental and not purely administrative. (*See* 1/26/98 Oral Hrg. Tr. at 8:16–22.)

---

**11.** Mathematical exactitude is not mandated. *See Hadley v. Junior College Dist. of Metro., Kansas City, Missouri,* 397 U.S. 50, 58, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970) (citing to *Wesberry,* 376 U.S. at 18; *Reynolds,* 377 U.S. at 577). However, evidence of deviation from the norm, more than a "minor deviation", is *prima facie* constitutionally invalid. *See Connor v. Finch,* 431 U.S. 407, 97 S.Ct. 1828, 52 L.Ed.2d 465 (1977) (holding a legislative reapportionment plan to be in violation of the Fourteenth Amendment Equal Protection Clause where the resulting maximum population deviations were greater than 10% and, consequently, could not be characterized as *de minimis* ). The facts of this case demonstrate a *prima facie* violation of the Equal Protection Clause as departure from strict voter equality results in a total deviation from the norm of 179.3% upon implementation of the 1997 estimated population figures. (*See* Moskovitz Cert. ¶ 15; *see also supra* text pp. 8–9.)

■ Further, although *Sailors* is urged upon the Court and is facially appealing, it is of limited application and incongruous with the principle espoused through "one person, one vote." In addressing the extent to which "one person, one vote" applies in the election of a local government official, the Supreme Court in *Hadley* discarded any distinction between administrative and legislative elections; "governmental activities 'cannot easily be classified in the neat categories favored by civics texts.'" 397 U.S. at 54–55 (quoting *Avery*, 390 U.S. at 482). Indeed, the Supreme Court characterized education as a traditional vital government function whose trustees act as government officials. *See id.* 397 U.S. at 56. Consequently, the Supreme Court held that:

> as a general rule, whenever a state or local government decides to select persons by popular election to perform governmental functions, the Equal Protection Clause of the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in that election, and when members of an elected body are chosen from separate districts, each district must be established on a basis that will insure, as far as practicable, that equal numbers of voters can vote for proportionally equal numbers of officials.

*Id.* In essence, the Supreme Court held that all elections must comply with the "one person, one vote" principle. Nevertheless, *Sailors* remains good law. All members of the *Hadley* court approved of the *Sailors* decision, saying, "We have also held that where a State chooses to select members of an official body by appointment rather than election, and that choice does not itself offend the Constitution, the fact that each official does not 'represent' the same number of people does not deny those people equal protection of the laws." *Id.* 397 U.S. at 58 (citing *Sailors*, 387 U.S. 105). Yet, *Sailors'* continuing vitality is in question in light of the current atmosphere as exemplified by *Hadley*, and as discussed *infra*, *Franklin*.

Beyond *Hadley*, the New Jersey Supreme Court has had the opportunity, in a case very similar to the current case, to interpret both *Hadley* and *Sailors*. And in a cogent majority opinion joined by all justices of the court without dissent, the New Jersey Supreme Court held in *Franklin* that the "one person, one vote" principle was applicable to a high school district school board election, and declared the apportionment formula embodied in N.J. Stat. Ann. 18A:13–8 unconstitutional as applied to the North Hunterdon Regional High School District.[12]

■ Although not bound by New Jersey precedent in resolving the current case, this Court gives great credence to the New Jersey Supreme Court in *Franklin*, which interprets *Hadley* and places *Sailors* in its proper perspective. Indeed, the New Jersey Supreme Court noted that although *Sailors* has not been expressly overruled, the Court "did appear willing to confine its holding strictly to the situation presented in that case." 74 N.J. at 352, 378 A.2d 218. Further, the New Jersey Supreme Court followed *Hadley* in concluding that because the present board members were elected, *Sailors* would not affect the case's outcome. *See id.* Thus, *Sailors* is inapposite in the current controversy. Moreover, as set forth *supra*, the parties in the current case do not contest that the Board performs important government functions. And the *Franklin* decision cited to *Hadley*'s characterization of education as a traditional government function. *See id.* at 353, 378 A.2d 218. Additionally, *Franklin* cited to a line of authority to emphasize that governmental bodies are bound by the "one person, one vote" constitutional rule. *See id.* at 354, 378 A.2d 218 (citing *Avery v. Midland County, Texas*, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968) (county commissioners court); *Baker v. Regional High School District No. 5*, 520 F.2d 799 (2d Cir.), *cert. denied*, 423 U.S. 995, 96 S.Ct. 422, 46 L.Ed.2d 369 (1975) (regional school district); *Cantwell v. Hudnut*, 419 F.Supp. 1301 (D.Ind.1976), *reversed in part on other grounds and aff'd. in part*, 566 F.2d

12. The present statute was drafted specifically to meet North Hunterdon's apportionment problems; the North Hunterdon district involved more than nine municipal members. *See Franklin Township*, 74 N.J. at 349–50, 378 A.2d 218.

30 (7th Cir.1977), *cert. denied,* 439 U.S. 1114, 99 S.Ct. 1015, 59 L.Ed.2d 71 (1979) (special district performing general governmental powers including police and fire services); *Barnes v. Board of Dirs., Mt. Anthony Union High School Dist.,* 418 F.Supp. 845 (D.Vt.1975) (school district's board of directors)); *see also Council of Alternative Political Parties v. Hooks,* 121 F.3d 876 (3d Cir.1997) (granting preliminary injunctive relief in favor of alternative political parties' § 1983 action challenging the constitutionality of a New Jersey statute governing the filing of nominations of candidates seeking placement on the general election ballot).

By the authority of *Hadley* and *Franklin,* this Court deems that the constitutional principle of "one person, one vote" is applicable to the Board at issue in the current case. And N.J. Stat. Ann. 18A:13–8 as applied to the Board is unconstitutional.

Because the Board currently provides for one vote per member of the Board, the current "one municipality, one vote" voting scheme results in unequal apportionment due to population. Accordingly, the Board is unconstitutional as presently constituted. Several of the other issues advanced that relate to constitutional estoppel, waiver, laches, statute of limitations, the Eleventh Amendment, sovereign immunity, pendent jurisdiction, due process, joinder, and standing are without merit and do not warrant further discussion.[13] (*See, e.g.,* 1/26/98 Oral Hrg. Tr. at 40:3–5, 8–9.)

**The Inability to Withdraw From the Regional School District**

■ Beyond the constitutional infirmity of systematic discrimination against voters in the more populous districts, there exists a parallel concern that the less populated districts will now be deprived of a meaningful voice in the affairs of the regional school district. Although it may be argued that such a result is the product of win-lose constitutional skirmishes, the loss here is pernicious.

Those municipalities whose weighted vote is cumulatively less than that of Howell's, Marlboro's, or Manalapan's on an individual basis are correct to question whether they should continue to participate in the regional school district following reapportionment. Yet, the provisions that permit withdrawal from a regional school district are so onerous that a withdrawal application is not a reasonable option.

Thus, these constituent municipalities, which possessed one vote each prior to this application, are now reduced to a whisper in the wind, yet remain obligated to pay their apportioned share of the appropriations of the regional district. The stunning effect of taxation without representation contrary to the 1954 formation accords of one vote per constituent municipality is the type of distress that calls for a legislative solution. Although this Court writes on a clean slate, it is not the Court's prerogative to legislate through judicial fiat. This regional school district must provide a voice to all, not just some of its citizens. Accordingly, the New Jersey State Legislature is the appropriate body to reconcile and remedy these disparate imperatives.

Meanwhile, awaiting a legislative solution, the Court will retain jurisdiction and rely on the Commissioner of Education or his designee to apportion the votes of the constituent municipalities in a constitutionally acceptable manner. To assist the Commissioner in his endeavor, the parties have agreed to participate in a standstill agreement[14] and will defer consideration of voting on any substantive issues except financial matters that occur in the normal course of events. Because the Court will retain jurisdiction, any party may petition the Court on short notice for appropriate review not inconsistent with the tenor of this Opinion.

---

**13.** Further, the Court will not give substance to the racial animus argument. Constitutional issues cannot be decided on whether the Court "think[s] people have underlying racial animus in their hearts or they do not." (1/26/98 Oral Hrg. Tr. at 48:24–25; 49:1–6.)

**14.** The standstill agreement will maintain the status quo for a period of 28 days from January 30, 1998.

## CONCLUSION

For the foregoing reasons, plaintiffs the Township of Marlboro, Marcus, Greenstein, the Township of Manalapan, and Bachman's summary judgment motion will be granted in part and denied in part in conformity with the body of this Opinion, and defendants the Board of Education of the Freehold Regional High School District, Maddaluna, Klagholz, and Colts Neck's cross-motions for summary judgment will be denied. The Court calls upon the Legislature for a legislative solution and in the interim, the Commissioner of Education or his designee shall apportion the Board's votes in a manner consistent with the expressed concerns of the Court.

An appropriate Order is attached.

### *ORDER*

In accordance with the Court's Opinion filed herewith,

It is on this 4th day of February, 1998

ORDERED that plaintiffs Township of Marlboro and Township of Manalapan's Complaints are consolidated; and it is further

ORDERED that defendant Colts Neck's motion to intervene is granted; and it is further

ORDERED that plaintiffs' summary judgment motion is granted in part as N.J. Stat. Ann. 18A:13–8 is unconstitutional as applied; and it is further

ORDERED that defendants' summary judgment motions are denied; and

THIS MATTER is referred to the New Jersey State Legislature for a legislative solution; and it is further

ORDERED in the interim that the Commissioner of Education or his designee is appointed to apportion the Board's votes.