**Patrick C. ENGLISH, Plaintiff,**

**v.**

**THE BOARD OF EDUCATION OF THE TOWN OF BOONTON, et al., Defendants.**

**No. CIV 00–5394.**

United States District Court, D. New Jersey.

March 26, 2001.

■

---

Aaron Dines, Dines & English, Clift, J, for Plaintiff.

Tennis A. Collins, Tucci, Collins & Vella, Long Branch, NJ, Thomas Russo, Attorney General of New Jersey, Trenton, NJ, for Defendants.

### OPINION AND ORDER

HOCHBERG, District Judge.

This matter comes before the Court on cross-motions for summary judgment filed by Plaintiff Patrick C. English and Defendant Vito Gagliardi, Sr., Acting Commissioner of Education of the State of New Jersey (the "State").[1] The issue in this case is the extent to which the Fourteenth Amendment's "one person, one vote" principle applies to representation on a town's school board which governs a high school engaged in a "sending-receiving" relationship with another town. This Court having reviewed the submissions and oral argument of the parties, and for the reasons set forth below, this Court grants summary judgment for Plaintiff.

### I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff is a resident of Lincoln Park, New Jersey, and brings this lawsuit in his

---

**1.** The State's motion was originally cast as a motion to dismiss under Fed.R.Civ.P. 12(b)(6); the parties having subsequently agreed that no material issue of fact was in dispute, Plaintiff and the State agreed to convert the State's motion to a motion for summary judgment.

capacity as a citizen. Plaintiff is also a member of the Lincoln Park Board of Education.[2] Lincoln Park is the "sending" district in a "sending-receiving" relationship with Boonton, New Jersey. Boonton High School is governed by the Boonton Board of Education (the "Boonton Board"), which has nine members from Boonton. Pursuant to N.J. Stat. Ann. § 18A:38–8, Lincoln Park is allotted only one representative to the Boonton Board, despite the fact that Lincoln Park pays tuition to send its high school students to Boonton High School, and Lincoln Park students constitute 52% of the Boonton High School population. Plaintiff filed a Complaint on November 1, 2000, alleging that N.J. Stat. Ann. § 18A:38–8 is unconstitutional as it (1) violates the Due Process and Equal Protection clauses of the United States Constitution; (2) violates Plaintiff's civil rights under 28 U.S.C. § 1983; and (3) violates the Equal Protection guarantees of the New Jersey Constitution.

The New Jersey legislature requires each public school district to educate, at its own expense, all students who are domiciled within that district. N.J. Stat. Ann. § 18A:38–1. Pursuant to this statutory scheme, school districts without high schools may designate a high school outside of the district for its students to attend, with the consent of the receiving school district; the "sending" district pays tuition to the receiving school for the edu-

cation of its students (known as a "sending-receiving" relationship). N.J. Stat. Ann. § 18A:38–3, –8. School districts engaged in sending-receiving relationships may not withdraw from the relationship without the consent of the State. N.J. Stat. Ann. § 18A:38–13. For school districts in most counties in New Jersey, the statute provides for no more than one representative of the sending district to participate on the receiving district's board of education, regardless of the relative populations of the two districts.[3] N.J. Stat. Ann. § 18A:38–8.2. In relevant part, the statute provides:

A school district which is sending pupils to another school district pursuant to N.J.S. 18A:38–8 shall have representation on the board of education of the receiving school district as follows:

a. (1) If the pupils of the sending district comprise less than 10 percent of the total enrollment of the pupils in the grades of the receiving district in which the pupils of the sending district will be enrolled, the sending district shall have no representation on the receiving district board of education.

(2) If the pupils of the sending district comprise at least 10 percent of the total enrollment of the pupils in the grades of the receiving district in which the pupils of the sending district will be enrolled, the sending district shall have one rep-

**2.** At oral argument, Plaintiff stated that one of the reasons the Board of Education of Lincoln Park, or the town of Lincoln Park, declined to bring the instant lawsuit was the potentially high financial cost of the litigation. Plaintiff submitted a resolution passed by the Board of Education of Lincoln Park (the "Lincoln Park Board") referencing the instant lawsuit and stating that "the Lincoln Park Board of Education requests that the Boonton Board of Education not contest this action."

**3.** In "sixth class" counties, the number of representatives of the sending school district on the school board is determined by a sliding scale, based on the relative number of students in the high school from the sending district and the receiving district. N.J. Stat. Ann. § 18A:38–8.4. The State is unable to provide any rational basis for the difference between the statute which governs sixth class counties and the statute which governs all other districts, including Boonton and Lincoln Park, N.J. Stat. Ann. § 18A:38–8.2.

resentative on the receiving district board of education.

N.J. Stat. Ann. § 18A:38–8.2.

The sending district's board representative is entitled to vote on the following matters provided in the statute:

a. Tuition to be charged the sending district by the receiving district and the bill lists or contracts for the purchase, operation or maintenance of facilities, equipment and instructional materials to be used in the education of the pupils of the sending district;

b. New capital construction to be utilized by sending district pupils;

c. Appointment, transfer or removal of teaching staff members providing services to pupils of the sending district, including any teaching staff member who is a member of the receiving district's central administrative staff; and

d. Addition or deletion of curricular and extracurricular programs involving pupils of the sending district.

N.J. Stat. Ann. § 18A:38–8.1.

Alternatively, several school districts without high schools may form a "regional" district for the education of all high school students within the towns comprising the regional district. The regional district elects a single board of education to govern the schools. *See* N.J. Stat. Ann. § 18A:13–1, –3, –5.

The town of Lincoln Park maintains its own elementary school, but entered into a sending-receiving relationship with the town of Boonton over 50 years ago for education of its high school students at Boonton High School.[4] U.S. Census data reveals that in 2000, the population of Lincoln Park was 10,930 and the population of Boonton was 8,496. The Lincoln Park population thus continues to represent approximately 56% of the population of the two districts combined and approximately 52% of the students in Boonton High School. Pursuant to N.J. Stat. Ann. § 18A:38–8.2, the Lincoln Park Board is entitled to appoint one representative to the Boonton Board, and that representative may vote on the issues itemized in N.J. Stat. Ann. § 18A:38–8.1. The citizens of Boonton elect the remaining nine members. Thus, 56% of the combined population of the two districts (and 52% of the students' interests) are represented by one Board representative; the remaining 44% of the population (and 48% of the students) have nine out of the ten Board members elected to represent their interests.

The sending-receiving relationship between Lincoln Park and Boonton has led to at least four major lawsuits between the districts, on topics ranging from the Lincoln Park Board representative's right to receive information to overcharging of tuition to Lincoln Park. (English Aff., ¶ 6, 7).[5] The district of Lincoln Park may

---

**4.** Originally, the districts of Montville, Mountain Lakes and Boonton Township were also sending schools to Boonton High School. All three districts were permitted to withdraw from the relationship because, according to Plaintiff, their school populations were not large enough to disrupt Boonton High School by withdrawing. (English Aff., ¶ 5). Defendants have not disputed the reason these three schools were permitted to withdraw.

**5.** Plaintiff submitted an affidavit in support of his motion for summary judgment ("English Aff."). Defendants did not submit any affida-

vit or certification in opposition, and in fact have stated that no genuine issues of material fact exist. Although in their reply brief, Defendants opposed part of the English Aff. as "includ[ing] matters not within the affiant's personal knowledge," Defendants submitted no affidavit or certification to oppose the facts in the English Aff. At oral argument, however, the State conceded that Defendants do not contest anything in the English Aff. other than: (1) one reference to the word "rancorous" and (2) a statement in which Mr. English purports to predict the outcome

not withdraw from this relationship without the consent of the State. N.J. Stat. Ann. § 18A:38–13. In order to submit a proposal to withdraw, the district must prepare and submit a feasibility study; the Commissioner of Education must then "make equitable determinations based upon consideration of all the circumstances, including the educational and financial implications for the affected districts, the impact on the quality of education received by pupils, and the effect on the racial composition of the pupil population of the districts." *Id.* This statute further provides that the Commissioner of Education "shall grant the requested change in designation or allocation if no substantial negative impact will result therefrom." *Id.*

Plaintiff avers, and Defendants do not dispute, that the withdrawal of a majority of the students from Boonton High School, which is relatively small, would "substantially disrupt educational programs" and "devastate the finances of the high school." (English Aff., ¶ 19). Plaintiff also certified that the Boonton Board has asserted in the past that the finances and educational programs would be devastated if Lincoln Park did in fact withdraw, and neither the Boonton Board of Education nor the State has disputed this assertion. (English Aff., ¶ 19). In addition, a request for withdrawal, especially if opposed by Boonton, would be financially burdensome on Lincoln Park. Finally, Plaintiff asserts "the Commissioner [of Education] has never allowed a send-receive relationship to be terminated under that statute when the sending district comprises more than 25% of the high school's students." (Complaint, ¶ 19). The State was unable to provide this Court

of an application to withdraw by Lincoln Park. (English Aff., ¶ 19); (Transcript, at 16). In addition, the parties agreed in the summary judgment papers and at a conference

with any precedent which contradicted this assertion.

## II. *STANDARD OF REVIEW*

Pursuant to Rule 56(c), a motion for summary judgment will be granted

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, "[s]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Indiana Hosp.,* 843 F.2d 139, 143 (3d Cir.1988). All facts and inferences must be construed in the light most favorable to the non-moving party. *See Peters v. Delaware River Port Auth. of Pa. and N.J.,* 16 F.3d 1346, 1349 (3d Cir.1994).

Substantive law controls the inquiry into which facts are "material." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. An issue is "genuine" if a reasonable jury could decide the issue in the nonmovant's favor. *Id.* Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.; accord Ridgewood Bd. of Educ. v. N.E.,* 172 F.3d 238, 252 (3d Cir.1999) *(citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

before Magistrate Judge Chesler that there were no material facts in dispute. (Transcript, at 53).

## III. *DISCUSSION*

 Citizens have a fundamental, constitutionally protected right to participate in congressional and certain local elections on an equal basis with other voters. *See, e.g., Dunn v. Blumstein,* 405 U.S. 330, 336, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); *Hadley v. Junior College District,* 397 U.S. 50, 56, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970); *Wesberry v. Sanders,* 376 U.S. 1, 48, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964); *Reynolds v. Sims,* 377 U.S. 533, 560–565, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); *Avery v. Midland County* 390 U.S. 474, 485, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968); *Evans v. Cornman,* 398 U.S. 419, 421–422, 426, 90 S.Ct. 1752, 26 L.Ed.2d 370 (1970); *Kramer v. Union Free School District No. 15,* 395 U.S. 621, 626–628, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969).[6] This Equal Protection guarantee provides that states must conduct elections in a manner to ensure that, as nearly as practicable, each person's vote is given substantially equal weight as that of any other voter. *Hadley,* at 54, 90 S.Ct. 791. The Supreme Court has held that this Equal Protection guarantee does extend to local governmental elections for members of a board of education. *Id.,* at 54, 90 S.Ct. 791. The Supreme Court stated:

> We therefore hold today that as a general rule, whenever a state or local government decides to select persons by popular election to perform governmental functions, the Equal Protection Clause of the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in that election, and when members of an

elected body are chosen from separate districts, each district must be established on a basis that will insure, as far as is practicable, that equal numbers of voters can vote for proportionally equal numbers of officials. It is of course possible that there might be some case in which a State elects certain functionaries whose duties are so far removed from normal governmental activities and so disproportionately affect different groups that a popular election ... might not be required, but certainly we see nothing in the present case that indicates that the activities of these trustees [of the junior college Board of Education] fit in that category. Education has traditionally been a vital governmental function and these trustees, whose election the State has opened to all qualified voters, are governmental officials in every relevant sense of that term.

*Id.* at 56, 90 S.Ct. 791.

 Since *Hadley,* numerous courts have applied this "one person, one vote" principle to elections of local educational officials. *See, e.g. Baker v. Regional High School District,* 520 F.2d 799, 803 (2d Cir. 1975) ("The [regional high school] boards here are elective bodies serving governmental functions. They must be organized to reflect one personnel vote principles."); *Marlboro Township Board of Ed. v. Freehold Regional High School,* 992 F.Supp. 756 (D.N.J.1998). Recently, in an unpublished opinion in this District, *Board of Educ. of Branchburg v. Livingston,* No. 98–5557, Chief Judge Thompson applied the *Hadley* voting principles to the sending-receiving relationship between the

---

**6.** *Cf. Ball v. James,* 451 U.S. 355, 362, 101 S.Ct. 1811, 68 L.Ed.2d 150 (1981). The Supreme Court has held that the "one person, one vote" principle of the Fourteenth Amendment may not strictly apply to the election of officials of certain special-purpose units of local government, such as irrigation districts.

*See also Pittman v. Chicago Board of Educ.,* 64 F.3d 1098, 1102 (7th Cir.1995) (citing *Ball v. James,* 451 U.S. 355, 362, 101 S.Ct. 1811, 68 L.Ed.2d 150 (1981); *Salyer Land Co. v. Tulare Lake Basin Water Storage District,* 410 U.S. 719, 731–733, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973)).

Branchburg and Livingston districts, and found the statute, as applied, to be unconstitutional.[7] *Id.* The New Jersey Supreme Court has interpreted *Hadley* to require the "one person, one vote" Equal Protection guarantee to apply to the election of board members for a regional high school. *Franklin Township v. Board of Educ. of N. Hunterdon High School,* 74 N.J. 345, 352, 378 A.2d 218 (1977). This Court finds that the Equal Protection clause of the Fourteenth Amendment requires that votes on the Board of Education of Boonton, for all matters affecting the citizens of Lincoln Park, must be apportioned in a manner which complies with the principles of "one person, one vote."

As did the citizens in *Hadley* and *Branchburg,* the citizens of Lincoln Park have a fundamental interest in the education of their students and in proportionate representation on the Boonton Board.[8] As set forth in the relevant part of the statute, N.J. Stat. Ann. § 18A:38–8.1, the Boonton Board has the power to hire and fire teachers, set curricula and change extracurricular activities. Furthermore, the citizens of Lincoln Park have an interest in the amount of tuition payments the town must make for students sent to the Boonton High School, which payments are determined in part by the high school budget voted on by the Boonton Board. Decisions by the Boonton Board thus have a direct and significant impact on the lives of all

Lincoln Park citizens, and their interest in such matters is not diminished by virtue of the fact that they live outside the Boonton school district. However, due to the statutory requirements of N.J. Stat. Ann. § 18A:38–8, the citizens of the town of Lincoln Park, despite representing well over 50% of the combined population of the two districts (and over 50% of the Boonton High School population), may elect only one representative to the Boonton Board, while the citizens of Boonton have the right to elect nine members. The unequal apportionment of voting power in the statute thus "results in a systematic discrimination against voters" in Lincoln Park. *Hadley,* 397 U.S. at 57, 90 S.Ct. 791.

Defendants have not proffered a rational basis (and certainly not a compelling state interest) for the discrepancy in voting power mandated by the statute, and this Court finds that none exists. Consequently, this Court finds that N.J. Stat. Ann. § 18A:38–8, as applied to the districts of Boonton and Lincoln Park, violates the Equal Protection guarantee of equal voting strength for each voter.[9]

The State claims, however, that the constitutional requirement of "one person, one vote" is inapplicable to sending-receiving relationships, because Boonton and Lincoln Park are separate geographical districts. However, *Hadley* involved eight separate school districts which combined

---

7. Following Chief Judge Thompson's opinion, the Defendants in *Branchburg* filed a petition to the Third Circuit for permission to appeal. On or about January 22, 2001, the Third Circuit denied the petition. The State has petitioned for rehearing *en banc.*

8. Although the parties do not raise the issue, this Court finds that *Pittman v. Chicago Board of Educ.* 64 F.3d 1098 (7th Cir.1995) is distinguishable. Unlike the councils at question in *Pittman,* which had neither taxing authority nor control over the school budget, the Boonton Board has a significant, direct impact on

Lincoln Park students and residents. For example, the Boonton Board may cause an increase in the tuition payments made by Lincoln Park.

9. The statute is unconstitutional as applied; it is not necessarily unconstitutional on its face. Depending on the relative populations of the districts in question, the statute may in some instances result in representation that, as practicably as possible, reflects the "one person, one vote" requirement.

for the purposes of forming a junior college district. *Hadley*, 90 S.Ct. at 792–93. The geographic boundaries which separated the districts for all purposes other than the junior college had no impact on the applicability of the constitutional right of the citizens of one district to have his or her vote given the same weight as citizens of the other districts. *See Hadley* 90 S.Ct. at 793. As stated by the Supreme Court in *Hadley,* "when members of an elected body are chosen from separate districts, each district must be established on a basis that will insure, as far as is practicable, that equal numbers of voters can vote for proportionally equal numbers of officials." 397 U.S. at 54, 90 S.Ct. 791. Furthermore, regional school districts often involve separate geographical voting districts for all purposes other than voting for the regional high school board. *See, e.g., Franklin,* 74 N.J. at 352, 378 A.2d 218. Thus, the fact that the districts are separate voting districts for other purposes is not controlling; the voting power of the two districts on the Board must be apportioned in a manner to reflect the "one person, one vote" constitutional requirement.

The State also claims that the "one person, one vote" requirement should not apply to sending-receiving relationships because they are voluntary, contractual arrangements. Although the initial decision to enter into a sending-receiving relationship is a voluntary one, after that initial determination the sending school may not voluntarily terminate the relationship without the approval of the State.[10] N.J. Stat. Ann. § 18A:38–13. As stated in Part I above, it is a virtual certainty that withdrawal is not a realistic option for Lincoln Park.[11]

Furthermore, although the districts continue to enter into contracts governing some aspects of the sending-receiving relationship, the statutory scheme dictates, to a large degree, the limited voting power of the sending district. Most importantly, the districts cannot negotiate the number of Board representatives and the voting powers of such representatives; the number of Board representatives and the voting rights of that representative are governed by statute, not contract. *See* N.J. Stat. Ann. § 18A:38–8.1, 8.2. The State's argument, which implies that the sending school contracted away its voting rights, is unsupported by the actual mandate of the statute in question.

This Court thus finds that N.J. Stat. Ann. § 18A:38–8 is unconstitutional as applied to the sending-receiving relationship between Lincoln Park and Boonton. The

**10.** The fact that the sending school must obtain State approval to withdraw demonstrates that the relationship is not "voluntary" in the sense that the participants willingly and voluntarily contracted away their right to equal representation. Furthermore, this Court notes that historically, the State has been unwilling to allow a sending school with a majority of the school population to withdraw due to the impact on the receiving school. A separation of these two school districts would surely entail lengthy, expensive litigation, with virtually no chance of success.

**11.** At oral argument, the State asserted that the *Branchburg* case is distinguishable because the sending district had submitted an application to withdraw from the sending-receiving relationship. However, later discussion during arguments revealed that the request to withdraw had occurred over fifteen years prior to the ensuing litigation before Chief Judge Thompson. Furthermore, the conduct of the parties in this case indicates that (i) Boonton in the past has indicated its opposition to withdrawal by Lincoln Park (English Aff., ¶ 19, 20) and (ii) the State is unlikely to grant any such request. (*See* Complaint, at 19). Defendants have not, however, argued that the matter is not ripe for adjudication; this Court finds that Lincoln Park's failure to formally petition the State to withdraw from the sending-receiving relationship does not affect the constitutional issue at bar.

Equal Protection clause of the Constitution requires that the votes on the Boonton Board, for all purposes which affect the citizens of Lincoln Park, must be apportioned in a manner as to give equal weight, as far as is practicable, to the voters of Lincoln Park and Boonton. However, given the significant impact of this Opinion and the Opinion of Chief Judge Thompson in *Branchburg* on these districts, this Court finds that it is appropriate to allow the State to propose a solution for resolving this issue for this Court's consideration.

### IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Plaintiff's motion for summary judgment is **GRANTED;** [12] and it is further

**ORDERED** that the State's motion for summary judgment is **DENIED;** and it is further

**ORDERED** that the State and Plaintiff shall confer and propose a joint resolution by April 30, 2001; if the parties cannot agree on a proposed solution, the State shall set forth a proposal to this Court no later than May 18, 2001, for a constitutional resolution to this case; and Plaintiff shall respond to the State's proposed solution by May 31, 2001.

---

12. This Court declines to reach Plaintiff's remaining claims. This Court also exercises its discretion not to retain jurisdiction of the supplemental state law claim asserted in the Complaint, and such claim is dismissed without prejudice. At oral argument, Plaintiff waived his motion for payment of attorney's fees and expenses, and such claim is therefore dismissed as moot.