Patrick ENGLISH, Plaintiff,

v.

**THE BOARD OF EDUCATION OF THE TOWN OF BOONTON, et al., Defendants.**

No. CIV. 00–5394.

United States District Court, D. New Jersey.

Aug. 21, 2001.

Aaron Dines, Dines & English, Clifton, NJ, for plaintiff.

Dennis A. Collins, Rucci, Collins & Vella, Long Branch, NJ, Jeffrey Speiser, Stern Greenberg & Kilcullen, Roseland, NJ, for Board of Education of Town of Boonton, defendant.

Thomas Russo, Atty. Gen. of N.J., Trenton, NJ, for David Hespe, defendant.

### *OPINION AND ORDER*

HOCHBERG, District Judge.

This matter comes before the Court to determine an interim remedy following this Court's finding that the New Jersey statute governing the relative voting power of two school districts in a sending-receiving relationship, N.J.S.A. 18A:38–8, was unconstitutional as applied to the districts of Lincoln Park and Boonton. *English v. the Board of Education of the Town of Boonton*, 135 F.Supp.2d 588 (D.N.J.2001) ("*English I*"). Post-judgment, the parties were required to meet

---

and propose a joint resolution to the constitutional infirmity found by the Court. Those meetings produced no fruitful solution to be implemented until the state legislature enacts a new statute, and this Court will therefore devise the appropriate interim remedy. Upon enactment of new state legislation, either side may petition to vacate this interim remedy.

## I. FACTUAL AND PROCEDURAL HISTORY

As described in greater detail in this Court's March 26, 2001 Opinion, the town of Lincoln Park maintains its own elementary school system, but entered into a sending-receiving relationship with the town of Boonton over 50 years ago for education of its high school students at Boonton High School. N.J.S.A. 18A:38–8 provides that Lincoln Park, the sending district, shall have one seat on Boonton's Board of Education, irrespective of the relative populations of the two towns. Census data for the year 2000 reveals that the population of Lincoln Park is 10,930 while Boonton's population is 8,496. Thus, the citizens of the town of Lincoln Park represent approximately 56% of the combined population of the two districts and 52% of the high school student population. Pursuant to N.J.S.A. 18A:38–8, the citizens of Lincoln Park are represented by one Board member while the citizens of Boonton have nine out of the ten Board members elected to represent their interests. This Court held that "the Equal Protection clause of the Fourteenth Amendment requires that votes on the Board of Education of Boonton, for all matters affecting the citizens of Lincoln Park, must be apportioned in a manner which complies with the principles of 'one person, one vote' ". *English I*, 135 F.Supp.2d at 596. Consequently, the Court declared N.J.S.A. 18A:38–8 unconstitutional as applied to the districts of Lincoln Park and Boonton.[1]

## II. DISCUSSION

### A. Plaintiff's Proposed Remedy

Plaintiff proposes two possible remedies: first, plaintiff suggests that three or four members of the Lincoln Park Board of Education ("Lincoln Park Board" or "Lincoln Park") be selected to sit on the Boonton Board of Education ("Boonton Board" or "Boonton"). The Lincoln Park members' votes would be weighted to give them 56% of the total board vote, a number equivalent to Lincoln Park's percentage of the combined population of both towns, but the Lincoln Park Board members would only vote on issues which affect the high school. Alternatively, plaintiff suggests creating a separate board of education for high school matters, consisting of nine members; Lincoln Park would elect five members and Boonton would elect four members.[2]

1. All facts above are cited from the Court's Opinion and Order of March 26, 2001. *English*, 135 F.Supp.2d at 589–92. These facts were uncontested and formed the basis of this Court's Opinion granting summary judgment.

2. The Court also sought the input of other interested but unnamed parties during the remedy phase. At the invitation of the Court, the Lincoln Park Board sent a representative to oral argument. The representative informed the Court that the Lincoln Park Board fully supports plaintiff's proposal, with one minor exception. The Lincoln Park Board suggested that, should the Court create three or four seats for Lincoln Park representatives on the Boonton Board, the members be appointed from the current Lincoln Park Board in order to act as liaisons between the two bodies. Further, the Lincoln Park Board requested that any vote on the Boonton High School budget or other high school referenda be put to a vote in both the towns of Boonton and Lincoln Park. (Transcript, July 23, 2001, pp. 24–27). Finally, the Court reviewed an unsolicited letter from two citizens of Lincoln

## B. State's Proposed Remedy

The New Jersey State Commissioner of Education ("the Commissioner") proposes that the Court model its remedy after N.J.S.A. 18A:38–8.4. Section 8.4 governs the sending-receiving relationship in "sixth-class" counties and bases the number of representatives allotted to a sending school district on a sliding scale. Based on this scale, a sending district whose students comprise at least 40% of the total enrollment of pupils in a school is permitted three representative's on the receiving district's board. Section 8.4 further provides that the sending district representatives be added to the existing receiving board and be permitted to vote on only those matters authorized by N.J.S.A. 18A:38–8.1. Thus, pursuant to the Commissioner's proposal, Lincoln Park would be given three seats on the Boonton Board comprised of twelve total members, representing 25% of the total board vote on issues within the purview of section 8.1.

However, the Commissioner's proposal does not comport with the principles of "one person, one vote" as it affects Boonton High School. The Commissioner was unable to proffer any rational basis underlying the state statute's disparate treatment of "sixth class" counties compared with all other counties in sending-receiving relationships, nor any reason why the application of this statutory provision to the facts of this case satisfies the Supreme Court's rulings. This proposal has already been rejected in an analogous case, upon a finding that the statute was special legislation "enacted with the prior approval of both districts [where] the issues of voter representation were not considered". *Board of Educ. of Branchburg v. Livingston*, No. 98–5557, slip op. at 9 (D.N.J. May 22, 2001). This Court agrees with Judge Thompson's assessment of N.J.S.A. 18A:38–8.4 in this context.

## C. Boonton Board of Education's Proposed Remedy

The Boonton Board suggests severing the sending-receiving relationship between itself and Lincoln Park. Boonton argues that severance is the best remedy because it will avert future disputes between the parties and avoid a scenario where the Lincoln Park representatives control facilities that are not owned by the citizens of Lincoln Park.

First, the Court notes that the issue of severance was addressed on the motions for summary judgment when all parties, including Boonton, did not contest that severance of the sending-receiving relationship would be deleterious for the students of both towns. This issue was thus decided by this Court in the Opinion and Order dated March 26, 2001. In support of its motion for summary judgment, plaintiff submitted an affidavit of undisputed material facts that neither Boonton nor the Commissioner contested on this point.[3] Plaintiff averred that the withdrawal of a

Park who are former members of the Lincoln Park Board.

**3.** Defendants submitted no counter-statement of material facts, nor any timely refutation of plaintiff's affidavit. Although untimely, Defendants did contest one reference to the word "rancourous" and a statement that predicts the likely future outcome of state administrative proceedings if an application to withdraw were to be made. These statements of the affidavit were not considered by the Court. *English*, 135 F.Supp.2d at 591, n. 5. The Court invited the Commissioner to submit any past administrative action by the Commissioner in which withdrawal of a greater than 25% of the student body in a sending-receiving relationship was approved. None was submitted. (The Commissioner did submit one case in which he approved the uncontested withdrawal of less than 25% of the student body.)

majority of the students from Boonton High School would "substantially disrupt educational programs" and "devastate the finances of the high school." *English I*, 135 F.Supp.2d at 592. The Court found that Defendants did not dispute these facts. *Id.* All parties are therefore estopped from arguing for the first time during the "remedy" hearing that severance would not be harmful to the students of both districts.[4] Accordingly, given the record in this case, the Court does not consider severance a viable option.

## D. Court's Remedy

This Court held that "[t]he Equal Protection clause of the Constitution requires that the votes on the Boonton Board, for all purposes which affect the citizens of Lincoln Park, must be apportioned in a manner as to give equal weight, as far as is practicable, to the voters of Lincoln Park and Boonton." *English*, 135 F.Supp.2d at 596. Accordingly, for those issues that "affect the citizens of Lincoln Park", the interests of the voters of the respective towns must be balanced to determine representation on the Boonton Board. Since it is primarily issues concerning Boonton High School which affect the citizens of Lincoln Park, a scheme that recognizes their heightened interest in those issues is the baseline for an appropriate remedy. The Court also recognizes, however, as did Judge Thompson in *Branchburg*, that the citizens of Boonton have a larger stake than do the citizens of Lincoln Park in issues which affect the Boonton school district as a whole. *Branchburg*, slip op. at 9. The Court seeks to craft a remedy that will balance these countervailing interests equitably, while enforcing the "one person, one vote" principle.

Accordingly, the Court will order the Lincoln Park Board to select three of its members to sit on the Boonton Board; those three new members will be added to the current board, which is comprised of nine Boonton members and one Lincoln Park member, bringing the total Board membership to thirteen. The four Lincoln Park board members will be limited to voting on those issues enumerated in section 8.1 of the statute, as interpreted by case law.[5] The Lincoln Park members' votes will be weighted by a factor of 2.5 on those issues that affect *only the high school*. The citizens of Lincoln Park, through their elected board members, will be represented by approximately 53% of the total vote on this category of issues as they affect the high school. This weighting will achieve, as nearly as practicable, representation proportionate to Lincoln

---

4. At oral argument on the remedy, the Court learned that the Boonton Board had recently passed a resolution petitioning the Commissioner for severance of the sending-receiving relationship with Lincoln Park. (Transcript, July 23, 2001, p. 53). This request is clearly inconsistent with the Boonton Board's prior position in this case. Furthermore, the Boonton Board's action was taken after the Court declared the statute unconstitutional and after the talks with the plaintiff failed to produce an amicable remedy. This Court views the Boonton petition as a retaliatory reaction to an adverse judgment in this litigation; moreover, the petition itself constitutes the vote of a Board whose composition had already been held to be unconstitutional in voting on issues affecting the high school. This Court notes, finally, that the Commissioner is also a defendant in this action who, through his briefs and argument of counsel (the Attorney General of New Jersey) conceded in the prior proceedings on summary judgment that severance of the relationship would "substantially disrupt educational programs" and "devastate the finances of the high school". It would therefore be utterly disingenuous for the Commissioner now to even consider granting Boonton's petition for severance.

5. The issues itemized in section 8.1 were not contested in this litigation, only the voting disparity created by the statute.

Park and Boonton's respective proportion of the combined population of the two districts.

Voting representation on district-wide issues will be weighted differently because, while they also "affect the citizens of Lincoln Park", they do so to a lesser degree. These issues, such as the election or hiring of school district central staff, have a disproportionately greater impact on Boonton voters compared with Lincoln Park voters because they affect an entire district comprised of predominately Boonton students. Therefore, on district-wide issues within the purview of section 8.1, the Lincoln Park members' votes will be weighted .7 to reflect the reduced, but still significant, interest of the citizens of Lincoln Park in district-wide issues. On these issues, Lincoln Park citizens will be represented by approximately 23% of the Board members' votes. The Court has determined this weighting system by using the student composition of the Boonton school district as a proxy for the relative interests of the citizens of Lincoln Park and Boonton.[6] Because district-wide issues affect Boonton's elementary school children but not Lincoln Park elementary school children (who remain in the Lincoln Park school district, controlled by the Lincoln Park Board) the interest of the citizens of Lincoln Park is considerably less than that of Boonton citizens. Clearly, on those issues that affect only Boonton's elementary school, the Lincoln Park board members will have no vote at all. All parties have represented to the Court that it is easy to determine which issues are "high school only", "elementary school only", and "district-wide".[7]

This two tiered voting structure will alleviate many of the Defendants' concerns regarding a perceived "take-over" of the Boonton school district by the citizens of Lincoln Park. The Defendants' concerns in this respect were also expressed by Judge Thompson in *Branchburg*. Judge Thompson noted that the sending school district could not be given a majority on the receiving board despite the sending district's greater population because "many issues affecting the [sending district] high school students also affect the entire [receiving] school district including the [receiving district's] grammar schools and middle school..." *Branchburg*, slip op. at 9. Judge Thompson continued, "[s]uch decisions affect the entire [receiving] school district of which, [the sending district] does not possess a majority of the total pupil population." *Id.* By implementing a voting scheme that alters the sending district's voting power depending upon the particular issue and one that considers central office administration a "district-wide" issue, this Court has alleviated the concerns articulated in *Branchburg*.

The Court recognizes that a voting scheme which gives Lincoln Park representatives a majority vote on high school issues within the purview of section 8.1 will, consequently, give Lincoln Park members a majority vote on the amount of tuition they pay to Boonton for the education of their students. *See* N.J.S.A. 18A38:8.1. However, the Commissioner in his papers has represented that the state review process for tuition provides for a

6. As of June of 2001, the total Boonton school district population was 1,281 elementary, middle, and high school students. Three hundred of those students were from Lincoln Park, representing approximately 23.4% of the total Boonton school district student population. These numbers were submitted to the Court by the plaintiff and were undisputed by Defendants.

7. The plaintiff so asserted at oral argument and both parties later agreed in chambers.

"thoughtful review process"; Boonton, a co-defendant of the Commissioner, joined in that description by the state, and does not contest that this state review process would protect Boonton as well as Lincoln Park. In addition, either district may request a special tuition audit to verify that tuition payments are fair and accurate.

This remedy upholds the constitutional mandate of "one person, one vote"while balancing the respective interests of the citizens of the towns of Boonton and Lincoln Park. This remedy shall remain in effect until the New Jersey Legislature amends the statute in a manner which reflects the constitutional mandate of "one person, one vote". *Hadley,* 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45; *see also Marlboro Township Board of Educ. v. Freehold Regional High School,* 992 F.Supp. 756 (D.N.J.1998).

### III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** on this 21st day of August 2001, that the voting relationship between the school districts of Boonton and Lincoln Park for the purposes of their sending-receiving relationship be restructured as set forth in this opinion; and it is further

**ORDERED** that this case is hereby closed.